## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CARMELLE BAPTISTE,                   )
                                       )     Case No. 8:15-cv-03698-PWG

    Plaintiff                )
                                         )

        v.                     )

MARYLAND TREATMENT CENTERS, INC.     )

    Defendant.               )

## JOINT MOTION FOR APPROVAL OF PROPOSED SETTLEMENT AGREEMENT

Plaintiff Carmelle Baptiste and Defendant Maryland Treatment Centers, Inc., by and through counsel, hereby respectfully request approval of the proposed settlement agreement, attached hereto as Exhibit A. The Parties have filed a memorandum of points and authorities in support of the instant joint motion.

Based on the foregoing, the Parties respectfully request that the Court grant this joint motion for approval of settlement.

Respectfully submitted,

Alan Lescht & Associates, P.C.

By: ___*/s/ Alan Lescht*___

Alan Lescht
1050 17th St., NW, Suite 400
Washington, DC 20036
Tel: (202) 463-6036
Fax: (202) 463-6067
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of August, 2016, a copy of the foregoing Joint Motion

for Approval of Proposed Settlement Agreement was filed electronically via ECF, which will send

notification to:

Charles R. Bacharach, Esquire
GORDON FEINBLATT, LLC
233 East Redwood Street
Baltimore, Maryland 21202
(410) 576-4169 (tel.)
*Counsel for Defendant*

_/s/ Alan Lescht_____

Alan Lescht

## AGREEMENT

THIS AGREEMENT is made between Carmelle Baptiste ("Baptiste") and Maryland Treatment Centers, Inc. ("the Company").

WHEREAS, Baptiste's employment with the Company terminated effective February 26, 2015 (the "Termination Date").

WHEREAS, Baptiste alleges that the Company wrongfully terminated her employment and owes her outstanding wages, and filed a lawsuit styled: *Carmelle Baptiste v. Maryland Treatment Centers, Inc.,* in the United States District Court for the District of Maryland, Civil Action No. 15-cv-3698 PWG (the "Litigation"), in which Baptiste seeks compensatory, liquidated and punitive damages and;

WHEREAS, the Corporation has denied Baptiste's claims in the Litigation, and;

WHEREAS, without any party admitting liability to the other, the parties have reached a settlement of the Litigation and have agreed as part of their settlement to a General Release;

NOW, THEREFORE, in consideration of the covenants and agreements contained herein, the adequacy of which is hereby acknowledged, it is agreed as follows:

1. Benefits to Baptiste.

    (a)    The Company agrees to pay Baptiste Fifty Thousand Dollars ($50,000.00) ("the Settlement Payment") as follows:

        (i)    Ten Thousand Dollars ($10,000.00) within ten (10) business days after the latter of the expiration of the revocation period set forth in Paragraph 5, or the dismissal of the Litigation without prejudice as set forth in Section 2(e).

        (ii)    Ten Thousand Dollars ($10,000.00) no later than 30 calendar days after the payment set forth in Section (i) is due.

        (iii)    Ten Thousand Dollars ($10,000.00) no later than 30 calendar days after the payment set forth in Section (ii) is due.

        (iv)    Ten Thousand Dollars ($10,000.00) no later than 30 calendar days after the payment set forth in Section (iii) is due.

        (v)    Ten Thousand Dollars ($10,000.00) no later than 30 calendar days after the payment set forth in Section (iv) is due.

Each of the above payments shall be paid as follows:

$1,531.30 (minus applicable taxes and other withholdings) payable to Baptiste, such amount to be reported for Baptiste on a form W-2.

$8,468.70, payable to Alan Lescht & Associates, PC, such amounts to be reported for Baptiste on a Form 1099-MISC with the payment recorded as "Gross Proceeds paid to an attorney".

If the 30th day under Paragraph 1(a)(ii) to (v) falls on a Saturday, Sunday or bank holiday, the due date shall be the next business day. Each payment set forth above shall be delivered to:

Marc E. Pasekoff, Esq.
Alan Lescht & Associates, PC



1050 17th Street, N.W.
Suite 400
Washington, DC 20036

(b) If any payment required by subparagraph (a) is not received by Mr. Pasekoff within ten (10) days of the due date , it shall constitute a default hereunder and the balance of any amount owing under this Agreement shall immediately become due and payable upon written notice from Baptiste to the Company, such notice providing the Company with five (5) days to cure the default. Such notice shall be effective upon receipt by facsimile to counsel for the Company at 410-576-4292 and with a copy to cbacharach@gfrlaw.com.

In the event of a default, the Company shall pay the Baptiste's attorney's fees and other costs incurred by Baptiste in connection with the default, including, but not limited to, the fees and costs incurred in seeking to recover any part of the Settlement Payment not paid as set forth in Paragraph 1(a).

(c) Baptiste agrees that Baptiste is not entitled to any other payments from the Company.

(d) Baptiste acknowledges that the Settlement Payment constitutes consideration in exchange for the promises made herein and that the Corporation is not otherwise obligated to provide any such payment or portions thereof. Baptiste further acknowledges that she bears the responsibility to pay any taxes owed in connection with the Settlement Payment and she indemnifies and holds harmless the Corporation for any liability for taxes (including interest and penalty therein) arising out of the Settlement Payment.

(e) Baptiste shall direct all inquiries about her employment from prospective employers to Craig Cutter, Corporate Director, Human Resources or his successor. Mr. Cutter, or his successor, shall provide only Ms. Baptiste's position, dates of employment and, if asked, rate of pay.

2. Commitments of Baptiste.

(a)    General Release and Forbearance Agreement. Baptiste releases and discharges the Company, its subsidiaries and affiliates, and their officers, directors, employees, agents and all employee benefit plans sponsored by the Company (the "Released Parties") from all claims, rights, charges and/or causes of action ("claims") which Baptiste had, now has or hereafter may have based on any act or omission which occurred through the date this Agreement is signed. This release covers all claims arising out of or related to Baptiste's employment with the Company, the termination of Baptiste's employment, and/or any other relationship of any kind between Baptiste and a Released Party, including, but not limited to, claims under the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), all other employment and employment discrimination laws, tort claims, contract claims, and claims under all federal, state, and local laws.

Baptiste confirms that the consideration provided under this Agreement is in addition to that to which Baptiste was already entitled. Baptiste voluntarily accepts the consideration set forth in Section 1(a) of this Agreement in full accord and satisfaction of all claims. This General Release is agreed to without reliance upon any statement or representation not contained in this Agreement.

Baptiste agrees that she will not file or maintain any suit (or seek or accept any compensation, benefit, or other remedy of any kind in any non-judicial forum or in any court) arising out of or related to the matters released, except an action to enforce this Agreement. Nothing in this Agreement shall be construed to prevent Baptiste from filing or participating in a charge of discrimination filed with, or investigation by, the Equal Employment Opportunity Commission or any other governmental agency. However, by signing this Agreement, Baptiste waives the right to recover any monetary damages,

2

individual relief, or attorneys' fees from the Company or any Released Party in any claim, charge, or lawsuit filed by Baptiste or any other person or entity.

(b)     Non-Disclosure.  On and after the date Baptiste receives this Agreement, she will not communicate any information concerning this Agreement (or even the fact that it is entered into) to anyone other than Baptiste's immediate family, accountant, and/or attorney who will keep it confidential. Disclosure by any such person will constitute a breach of this Agreement for which Baptiste is responsible. A disclosure to the Court to obtain approval of this settlement, or dismissal of the Litigation, or in response to a subpoena or court order shall not constitute a disclosure in violation of this sub-paragraph.  In the event that Baptiste receives a subpoena or court order requiring her to disclose this Agreement, or any of its terms, she (or her counsel) shall promptly  notify the Company through its counsel, Charles R. Bacharach and provide a copy of such subpoena or order.  Such notice shall be by facsimile at 410-576-4292 and with a copy to cbacharach@gfrlaw.com.

(c)     No Disparagement or Adverse Action.  On and after the date Baptiste receives this Agreement, she will not: (i) make any disparaging or derogatory statements, whether oral or written, regarding the Company, or its officers, directors, employees or agents; (ii) take any action adverse to the Company, or its officers, directors, employees, or agents, or encourage any other person to take any action adverse to the Company, or its officers, directors, employees, or agents, (iii) make any statement or take any action which could encourage any employee of the Company to terminate his or her employment with the Company or encourage the engagement of any Company employee by any other entity, or; (iv) make any statement or take any action which could encourage any client, supplier, or contractor of the Company or any person or entity which has engaged in business with or referred business to the Company to discontinue, in whole or in part, such relations or business with or referral to the Company or discourage future relations, business or referrals.

(d)     Confidential Information.  Baptiste will not either directly or indirectly, use, disclose or communicate to any person or entity any trade secret or confidential or proprietary information of the Company.  For purposes of this Agreement, "trade secret or confidential or proprietary information" means any information concerning the Company, its clients, and/or its vendors which Baptiste learned during Baptiste's employment and which is not generally known and available to sources outside the Company; such information shall include (without limitation) information, whether written or otherwise, regarding the Company's operations, financial information, plans, strategies, prospective and executed contracts, methods, policies, practices and arrangements and information regarding the Company's clients.

(e)     Dismissal of the Litigation.  Upon approval of the parties' settlement by the Court, Baptiste shall dismiss the Litigation  without prejudice.  Baptiste shall take whatever steps  are necessary to dismiss the Litigation with prejudice upon receipt of the payment set forth in Paragraph 1(a)(v).  The Parties agree that the  United States District Court for the District of Maryland will maintain jurisdiction over this matter until the Litigation is dismissed with prejudice.

(f)     No Rehire.  Baptiste agrees that she shall not apply to be hired by the Company in the future, that the Company would have a non-discriminatory basis not to rehire her if she did reapply, and, if she does so apply, the Company need not consider her application.

(g)     No Pending Claims.  Baptiste represents and warrants that, other than the Litigation, she does not presently have on file any claim, charge, grievance, or complaint against the Company or any Released Party in or with any administrative, state, federal, or governmental entity, agency, board, law enforcement agency, or court or before any other tribunal, panel or arbitrators, public or private, based upon any actions or omissions by the Company or any Released Party occurring prior to execution of this Agreement.

3.  Breach.  In the event of a disclosure prohibited by this Agreement or if Baptiste breaches any commitment made in this Agreement, other than a commitment which is related to a claim under the ADEA, then, in addition to any other rights the Company may have: (a) Baptiste agrees that no further payments

3

under Section 1(a) of this Agreement shall be due and the Company shall have the right to recover the payment made under Section 1(a) of this Agreement, and (b) Baptiste shall pay the Company's attorney's fees and other costs incurred by the Company in connection with the breach, including, but not limited to, the fees and costs incurred in seeking to recover such payment and/or to obtain injunctive relief with respect to the breach or threatened breach.

In the event Baptiste breaches any commitment made in this Agreement which is related to a claim under the ADEA, then, to the extent permitted by the ADEA, Baptiste agrees that the Company shall have the rights set forth in (a) and (b) of the preceding paragraph of this Section 3.

4. <u>Miscellaneous</u>.

(a) The Company has made no representations or promises except as set forth in this Agreement.

(b) If any provision of this Agreement is determined to be invalid or unenforceable, the parties agree that the invalid or unenforceable provision shall be modified to the minimum extent necessary so that the rights and obligations of the parties under the Agreement are preserved to the fullest extent permitted by law.

(c) This Agreement is governed by the laws of Maryland, without regard to any conflict of laws principle that would apply the law of another jurisdiction. The parties hereby waive trial by jury in any action arising under this Agreement. Any action arising under this Agreement will be brought in and will be subject to the exclusive jurisdiction and venue of the state or federal courts located in Maryland.

(d) This Agreement may be executed in counterparts, each of which will be deemed an original, but both of which together will constitute one and the same instrument. A facsimile, PDF or email copy of the signature of any signatory on this Agreement shall be deemed the equivalent of an original thereof.

5. <u>Revocation Period</u>.

BAPTISTE SHALL HAVE THE RIGHT TO UNILATERALLY REVOKE THIS AGREEMENT DURING THE SEVEN (7) DAY PERIOD FOLLOWING THE DATE OF ITS EXECUTION BY DELIVERING HER WRITTEN REVOCATION TO THE ATTENTION OF: N. Craig Cutter, Corporate Director, Human Resources, Maryland Treatment Centers, Inc., 3800 Frederick Avenue, Baltimore, MD 21229. This Agreement shall become effective after the expiration of the revocation period and the Company is not obligated to make any payments or provide any benefits hereunder until the Agreement becomes effective.

BAPTISTE ACKNOWLEDGES THAT SHE HAS READ THIS AGREEMENT COMPLETELY; THAT SHE CAN TAKE UP TO 21 DAYS FROM THE DATE SHE RECEIVED THE AGREEMENT TO DECIDE WHETHER TO SIGN IT; THAT SHE HAS BEEN ADVISED IN WRITING, VIA THIS AGREEMENT, TO CONSULT WITH AN ATTORNEY REGARDING IT; AND THAT SHE UNDERSTANDS EACH AND EVERY PROVISION OF IT.

IN WITNESS WHEREOF, the parties have executed this Agreement.

WITNESS:

_____

_____
Carmelle Baptiste

_____ , 2016

4

WITNESS:

MARYLAND TREATMENT CENTERS, INC.

By:_____   _____ , 2016
N. Craig Cutter, Corporate
Director, Human Resources

3309302

5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CARMELLE BAPTISTE,          )

    Plaintiff                      )

           v.                       )

MARYLAND TREATMENT CENTERS, INC.   )

    Defendant.                 )

Case No. 8:15-cv-03698-PWG

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
## JOINT MOTION FOR APPROVAL OF PROPOSED SETTLEMENT AGREEMENT

Plaintiff Carmelle Baptiste and Defendant Maryland Treatment Centers, Inc., by and through counsel, state as follows in support of the Joint Motion for Approval of Proposed Settlement Agreement:

### INTRODUCTION

A *bona fide* dispute exists as to whether Defendant is liable for violations of the Fair Labor Standards Act ("FLSA") and the Maryland Wage Payment and Collection Law ("MWPCL"), §§ 3-501 to 3-509. The Parties agree that the Proposed Settlement Agreement reflects a fair and reasonable compromise of this dispute. *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (requiring that a settlement of FLSA claims "reflects a 'reasonable compromise of disputed issues' rather than a 'mere waiver of statutory rights brought about by an employer's overreaching.'").

**ARGUMENT**

A.   A bona fide dispute exists as to Defendants' liability.

Several material facts are in dispute.  Principally, the Parties dispute whether Plaintiff is entitled to overtime under the FLSA and the MWPCL.  Plaintiff alleges that she was required to work during lunchtime and/or breaktime and had no means available for reporting the time worked. Defendant disputes that allegation.  The parties also dispute the amount of overtime pay to which Plaintiff would be entitled, if she prevailed.  Plaintiff also sought payment of accrued but unused leave.  Plaintiff argues that she should have received as much as $20,000 in unpaid overtime and accrued leave; Defendant believes she could only have received, at most, $13,166.50.

B.   The Proposed Settlement Agreement is fair and reasonable.

Regardless of the existence of a bona fide dispute, a settlement agreement will be approved only if it is fair and reasonable.  The Court considers the following factors in making this determination:

> "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel[]; and (6) the probability of plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery."

*Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *10) (E.D. Va. Sept. 28, 2009).

Each of the above factors indicates that the Proposed Settlement Agreement is fair and reasonable.  The parties have conducted extensive informal discovery, including Defendant's

records which would be produced if the Parties conducted formal, written discovery. The informality of discovery has increased the funds available for settlement.

The stage, complexity, expense, and duration of litigation also indicate that the Proposed Settlement Agreement is fair and reasonable. The instant case is also complex, involving multiple claims under both federal and state statutes.

There is no evidence of fraud or collusion between the Parties. In *Butler v. DirectSAT USA, LLC*, 2015 U.S. Dist. LEXIS 118125 (D. Md. Sept. 3, 2015), this Court approved a settlement agreement that "appear[ed] to be the product of negotiations between counsel, part of which was guided by Judge Day. Competent and experienced counsel on both sides zealously and vigorously advocated for their clients throughout this extended litigation." This is surely the case here. Both Plaintiff and Defendant were represented by counsel throughout the course of litigation. *See Lomascolo*, 2009 WL 3094955, at *12 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary."). Each party's attorney has considerable experience in employment law and agrees that the Proposed Settlement Agreement is fair and reasonable.

The amount of the settlement is also fair and reasonable. The Proposed Settlement Agreement requires Defendants to pay Plaintiff $50,000, consisting of back pay, liquidated damages and wrongful termination compensable damages. Based her version of the facts, the maximum amount of overtime pay Plaintiff could have recovered at hearing, under the FLSA, is approximately $15,000.

In *Edelen v. Am. Residential Servs., LLC*, 2013 U.S. Dist. LEXIS 102373, 29-31 (D. Md. July 22, 2013), the plaintiffs claimed that they could recover as much as $26.30 per work week, including liquidated damages, at trial. However, this Court approved a settlement agreement

which required defendants to pay plaintiffs $8.54 per workweek, or 32 percent of the maximum potential recovery. In finding this amount fair and reasonable, the Court noted the significant disparity between the parties' damages estimates. Although the plaintiffs argued that they could recover $26.30 per workweek, the defendants claimed they could only be liable for $0.42 per workweek. The parties further disputed whether plaintiffs were entitled to liquidated damages. Due to the significant factual and legal disputes involved, the Court held that 32 percent of the maximum potential recovery was fair and reasonable.

Similarly, in *Rivera v. Dixson*, 2015 U.S. Dist. LEXIS 11248 (D. Md. Jan. 29, 2015), this Court approved a settlement agreement pursuant to which the plaintiffs received 66 percent of potential recovery under the FLSA and only 44 percent of potential recovery under the MWPCL. The Court found that this agreement was fair and reasonable, especially in light of the fact that the parties disagreed as to whether the defendants were liable at all and the amount of overtime to which the plaintiff would be entitled. *Id.* at *4–*5. *See also* Beam v. Dillon's Bus Serv., 2015 U.S. Dist. LEXIS 85388, 12–14 (D. Md. July 1, 2015) (approving a settlement agreement that provided far less than the maximum potential discovery where the plaintiffs' "success on the merits [wa]s uncertain due to the serious questions of fact and law" and where they "risk[ed] recovering less than the settlement amounts or nothing at all if Defendants succeed in proving they are exempt employees.").

*Eleden* and *Rivera* are applicable to the instant case. Here, there are similar disputes as to whether Defendant is liable at all, the amount of overtime, if any, to which Plaintiff is owed, and whether Plaintiff would be entitled to liquidated damages. Defendant claims it is not liable for any violations of law. Defendant maintains that it did not act in bad faith, and that Plaintiff, therefore, is not entitled to liquidated damages. There is also uncertainty as to the amount of backpay

Plaintiff should have received, if any. In short, Plaintiff could recover nothing, or significantly less than her claimed damages. *See Pringle v. Blair Towers LLC*, 2015 U.S. Dist. LEXIS 85384, 9-10 (D. Md. June 30, 2015) (approving a settlement agreement for which the plaintiff received an amount equivalent to unpaid overtime but no liquidated damages, in light of dispute as to whether the plaintiffs would recover at all and for defendants agreement to release unpaid rent claims against the plaintiffs).

## ATTORNEY'S FEES

The Court uses the lodestar approach to determine whether an award of attorney's fees is reasonable. The lodestar amount is determined by multiplying a "reasonable hourly rate" by the number of hours reasonably expended. *Pitts v. Levy Family Assocs., LLC*, 2015 U.S. Dist. LEXIS 56191, 11–12 (D. Md. Apr. 27, 2015) (citing *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 2014 WL 2174751, at *6 (D. Md. 2014) (internal citations omitted). The Court considers several factors in determining whether a fee is reasonable:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). The Local Rules provide more

specific guidance on reasonable attorney's fees. *See* U.S. District Court of Maryland Local Rules (July 1, 2014) – March 2015 Supplement, Appx. B (hereinafter "Appx. B"), which provides:

    a. Lawyers admitted to the bar for less than five (5) years: $150-225.

    b. Lawyers admitted to the bar for five (5) to eight (8) years: $165-300.

    c. Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225-350.

    d. Lawyers admitted to the bar for fifteen (15) to nineteen (19) years: $275-425.

    e. Lawyers admitted to the bar for twenty (20) years or more: $300-475.

    f. Paralegals and law clerks: $95-150.

Based on the aforementioned factors and the U.S. District Court for the District of Maryland Local Rules (the "Local Rules"), $20,000 is a reasonable fee in the matter at hand.

Ms. Baptiste retained her attorney under a contingent fee retainer agreement providing counsel 40-percent of settlement. This fee arrangement was negotiated separately from the damages provided in the Proposed Settlement Agreement. Under the lodestar approach, $20,000 is a reasonable fee for this work for the 64.9 hours of work Plaintiff's counsel performed. *See e.g., Pitts v. Levy Family Assocs., LLC*, 2015 U.S. Dist. LEXIS 56191, *14–15 (D. Md. Apr. 27, 2015) (approving a settlement agreement that provided $27,723.55 for 145.8 hours of work performed by the plaintiffs' counsel).

Specifically, the preliminary investigation, fact-finding, research and Complaint drafting was undertaken by Anabia Hasan, Esquire. Ms. Hasan is an attorney with five years of experience. She billed 9.3 hours at a rate of $325.00/hour (total: $3,022.50).[1]

After Ms. Hasan left the Firm to take a position with the Office of general Counsel at U.S. Equal Employment Opportunity Commission, the work in this case was performed by Marc E.

---

[1] Appendix B allows for an hourly rate from $165-300 for these nine (9) hours.

Pasekoff, Esquire. Mr. Pasekoff has been a licensed attorney for more than 20 years, with significant litigation experience in the area of employment law. *See* Pasekoff Affidavit attached as **Exhibit B**. In total, over the Mr. Pasekoff billed 55.1 hours at an hourly rate of $395.00. [2] Mr. Pasekoff researched possible additional causes of action, and prepared the Amended Complaint which included a claim for wrongful termination. Thereafter, Mr. Pasekoff and opposing counsel engaged in vigorous debate, including legal research and citations, concerning the validity of Plaintiff's wrongful termination cause of action. In addition, as requested by Ms. Baptiste, Mr. Pasekoff pursued her potential COBRA claims, both before and after Defendant provided documentation that indicated that appropriate notice had been sent. Finally, Mr. Pasekoff engaged in extensive negotiations with opposing counsel to secure a settlement and a mutually agreeable settlement agreement. [3]

Sandra Valiente is a paralegal at Alan Lescht and Associates. She worked 3.7 hours, but was billed for only 2.5 hours at a rate of $25.00 per hour (total: $75.00).[4]

Based on the foregoing, and pursuant to the Local Rules, Plaintiff's counsel could charge between $18,302.00 and $29,337.50 for the work performed on Plaintiff's case. *See* Appx. B. Given the uncertainty of a favorable outcome for Ms. Baptiste, the $20,000.00 fee Plaintiff's counsel will receive under the Proposed Settlement Agreement is more than reasonable under the lodestar approach.

To date, Plaintiff's attorneys have spent 64.9 hours representing Plaintiff in the instant matter. Pursuant to Appendix B of the U.S. District Court of Maryland Local Rules, Plaintiff's counsel's time was spent accordingly:

---

[2] Appendix B allows for an hourly rate of $300-475 for these 55.1 hours.

[3] Another associate, August Johannsen, spent .5 hours of time at his $225.00/hour rate.

[4] Appendix B allows for an hourly rate of $95-150 for these 2.5 hours.

1. <u>Case development, background investigation and case administration:</u>  29.5 hours.

2. <u>Pleadings:</u>  21.8 hours.

3. <u>Interrogatories, document production, and other formal/informal written discovery:</u>  13.6 hours.

*See* **Exhibit A.**

The time spent preparing this filing is not included.

## CONCLUSION

Based on the foregoing, the parties respectfully request that the Court grant this joint motion for approval of settlement.

Dated:  August 29, 2016

Respectfully submitted,

Alan Lescht & Associates, P.C.

By:    */s/ Alan Lescht*

Alan Lescht
1050 17th St., NW, Suite 400
Washington, DC 20036
Tel:  (202) 463-6036
Fax:  (202) 463-6067
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of August 2016, a copy of the foregoing was filed

electronically via ECF, which will send notification to:

Charles R. Bacharach, Esquire
GORDON FEINBLATT, LLC
233 East Redwood Street
Baltimore, Maryland 21202
(410) 576-4169 (tel.)
*Counsel for Defendant*

                                               */s/ Alan Lescht*

                                                   Alan Lescht

# Alan Lescht & Associates

1050 17th St., NW, Suite 400  Washington, DC 20036
**Phone:** (202) 463-6036 | **Fax:** (202) 463-6067

## ACCOUNT STATEMENT

**Prepared for:**
Carmelle Baptiste

**RE:**
Employment Matter

| | |
|---|---|
| Previous Balance | $0.00 |
| Current Charges | $25,113.61 |
| **New Balance** | **$25,113.61** |
| | |
| Adjustments | $0.00 |
| | |
| Payments | $0.00 |
| TOTAL NOW DUE | **$25,113.61** |
| Trust Account | $0.00 |

**Summary Table & Evergreen Retainer Fields:**

TOTAL:$25,113.61

PREVIOUS BALANCE DUE:$0.00

CURRENT BALANCE DUE AND OWING:$25,113.61

:



EXHIBIT
A

# Alan Lescht & Associates

1050 17th St., NW, Suite 400  Washington, DC 20036
**Phone:** (202) 463-6036 | **Fax:** (202) 463-6067

## PRE-BILL

Carmelle Baptiste
8860 Piney Branch Road, #1009
Silver Spring, MD 20903

| Invoice Date | August 19, 2016 |
|---|---|
| Invoice Number | Pre-bill |
| Invoice Amount | $25,113.61 |

**Matter:** Employment Matter

**Attorney's Fees**

| | | | | |
|---|---|---|---|---|
| 6/30/2015 | Review timeline; telephone call with Client | A.H. | 0.50 | $162.50 |
| 8/11/2015 | intake meeting with client re whistleblower complaint | A.H. | 0.70 | $227.50 |
| 8/11/2015 | Research MD whistleblower statues; case conference re same | A.H. | 0.50 | $162.50 |
| 10/1/2015 | review regulations re June 2015 maryland False claims | A.H. | 0.80 | $260.00 |
| 10/1/2015 | Telephone call with client re whistleblower complaint | A.H. | 0.20 | $65.00 |
| 10/7/2015 | Telephone Call with Client | A.H. | 0.30 | $97.50 |
| 11/2/2015 | Telephone Call with Client | A.H. | 0.10 | $32.50 |
| 11/3/2015 | telephone call with client; reissue to demand letter to baltimore office; case conference with RR and JD | A.H. | 0.50 | $162.50 |
| 11/4/2015 | Telephone Call with Client re demand letter | A.H. | 0.30 | $97.50 |
| 11/10/2015 | revise complaint re wages allegations; | A.H. | 1.20 | $390.00 |
| 11/17/2015 | revise class action complaint | A.H. | 0.70 | $227.50 |
| 11/18/2015 | Email correspondence with Client | A.H. | 0.10 | $32.50 |
| 11/30/2015 | revise class action complaint; incorporate cobra allegation; | A.H. | 1.00 | $325.00 |
| 12/2/2015 | compile summons & civil coversheet; file complaint via ecf | A.H. | 0.30 | $97.50 |

| Date | Description | | | |
|---|---|---|---|---|
| 12/2/2015 | Phonecall with Ms. Baptiste to confirm her complaint has been filed. | S.V. | 0.10 | $7.50 |
| 12/3/2015 | review case management order; docket dates | A.H. | 0.20 | $65.00 |
| 12/8/2015 | file supplemental documents | A.H. | 0.10 | $32.50 |
| 12/10/2015 | telephone calls with class plaintiffs | A.H. | 0.70 | $227.50 |
| 12/11/2015 | revise amended complaint to include class plaintiffs; research re class cert | A.H. | 1.10 | $357.50 |
| 1/21/2016 | Brief internet research regarding Defendant | M.P. | 0.30 | $118.50 |
| 1/21/2016 | Entered Deadline/provided M.P. with client contact info/continued search for file | S.V. | 0.30 | $22.50 |
| 1/21/2016 | Review and notate Complaint; Determine status of service of process; Review Case Management Order; Research possible causes of action for Amended Complaint; | M.P. | 2.10 | $829.50 |
| 1/21/2016 | Review case file | M.P. | 0.40 | $158.00 |
| 1/21/2016 | Telephone call with client (re: status; introduction) | M.P. | 0.30 | $118.50 |
| 1/26/2016 | Discuss case with Alan Iescht | M.P. | 0.20 | $79.00 |
| 1/26/2016 | discuss w/ MP, read complaint/files | A.J. | 0.50 | $112.50 |
| 1/27/2016 | sent email to M.P. with question from client | S.V. | 0.10 | $7.50 |
| 1/27/2016 | Status telephone call (re: service of process) with client | M.P. | 0.10 | $39.50 |
| 1/29/2016 | emailed efile link to M.P. | S.V. | 0.10 | $7.50 |
| 1/30/2016 | Prepare additional causes of action to amend Complaint; Review local rules (re: amend pleadings) | M.P. | 0.90 | $355.50 |
| 2/1/2016 | Telephone call with client regarding additional case particulars; Supplement Complaint | M.P. | 0.60 | $237.00 |
| 2/4/2016 | Created case file/scanned and copied client's docs/uploaded docs to Efile | S.V. | 0.20 | No Charge |
| 2/4/2016 | Review MTC Employee handbook; research Maryland caselaw (re: employee handbook) | M.P. | 0.60 | $237.00 |
| 2/5/2016 | Update telephone call with client | M.P. | 0.10 | $39.50 |
| 2/9/2016 | Finalize amending Complaint; Discuss with Alan Iescht | M.P. | 1.00 | $395.00 |
| 2/11/2016 | Amend Complaint | M.P. | 0.80 | $316.00 |
| 2/12/2016 | File Amended Complaint and prepare additional package for process server | M.P. | 0.40 | $158.00 |
| 2/12/2016 | Met with M.P. to discuss docs to be served/made copies for WPS/prepared memo/scheduled courier/scanned docs and uploaded to efile | S.V. | 0.60 | $45.00 |
| 2/22/2016 | Call & Email to WPTS for status update | S.V. | 0.10 | $7.50 |
| 2/22/2016 | Confirm service of process on Defendant; Notify client via e-mail | M.P. | 0.30 | $118.50 |
| 2/26/2016 | Telephone call with counsel for Defendant (re: scheduling; possible future discussions); review Stipulation forwarded by Counsel for Defendant | M.P. | 0.40 | $158.00 |

| 2/29/2016 | Adjusted deadline date of Def's reply | S.V. | 0.20 | $15.00 |
|---|---|---|---|---|
| 2/29/2016 | Calendared DL for Def's response to complaint/scanned and uploaded proof of service to efile | S.V. | 0.20 | $15.00 |
| 2/29/2016 | Communications with opposing counsel (re: Stipulation) | M.P. | 0.50 | $197.50 |
| 3/17/2016 | Telephone call with opposing counsel regarding case status and potential settlement discussion | M.P. | 0.40 | $158.00 |
| 3/18/2016 | Telephone call with cl;ient regarding call with opposing counsel and discussions concerning elements and amounts of proposed settlement demand | M.P. | 0.60 | $237.00 |
| 3/21/2016 | Telephone call with client (re: settlement demand) | M.P. | 0.30 | $118.50 |
| 3/23/2016 | Telephone call with client (re: settlement authority); Exchange e-mails with opposing counsel (re: teleconference) | M.P. | 0.20 | $79.00 |
| 3/24/2016 | Telephone call with opposing counsel (re: settlement; itemization of damage) | M.P. | 0.50 | $197.50 |
| 3/28/2016 | Prepared and organized binder | S.V. | 0.50 | No Charge |
| 3/31/2016 | Telephone call with opposing counsel (re: settlement demand); Review letter from opposing counsel (re: settlement demand); Research Maryland caselaw cited by Defendant | M.P. | 2.80 | $1,106.00 |
| 4/1/2016 | Telephone call with client (re: opposing counsel response to settlement demand) | M.P. | 0.40 | $158.00 |
| 4/4/2016 | Telephone call with client (re: settlement); Research COBRA | M.P. | 0.30 | $118.50 |
| 4/5/2016 | Adjusted deadline for def response/uploaded Joint Stipulation to Extend to efile/updated binder | S.V. | 0.10 | $7.50 |
| 4/5/2016 | Exchange communications with opposing counsel related to Stipulation (additional time to respond); review and comment on proposed Stipulation | M.P. | 0.50 | $197.50 |
| 4/6/2016 | Research Maryland break law and COBRA penalties as follow-up to call with client; Review Employee handbook regarding unused leave and breaks | M.P. | 1.20 | $474.00 |
| 4/11/2016 | Follow-up status telephone call with client | M.P. | 0.40 | $158.00 |
| 4/13/2016 | Review e-mail from client (re: COBRA); Research; Exchange communications with opposing counsel and review attachment forwarded by opposing counsel; telephone call with client (re: alleged COBRA notification) | M.P. | 2.80 | $1,106.00 |
| 4/14/2016 | Telephone call with client (re: COBRA notice); Research permissible delivery methods and requirements | M.P. | 0.60 | $237.00 |
| 4/21/2016 | Exchange e-mails with client (re: settlement | M.P. | 0.10 | $39.50 |

| | demand) | | | |
|---|---|---|---|---|
| 4/26/2016 | Telephone call with client (re: follow-up questions) | M.P. | 0.30 | $118.50 |
| 4/27/2016 | Exchange e-mails with opposing counsel; Research Maryland caselaw related to wrongful termination/public policy exception | M.P. | 1.60 | $632.00 |
| 4/28/2016 | Telephone call with opposing counsel (re: outstanding legal and factual matters); Additional research concerning public policy exception - wrongful discharge; Telephone call with client (re: additional disclosure specifics) | M.P. | 2.00 | $790.00 |
| 5/3/2016 | Exchange e-mails with opposing counsel; Review and comment on proposed Consent Motion | M.P. | 0.40 | $158.00 |
| 5/10/2016 | E-mail from opposing counsel (re: COBRA claim); Review DOL Complaint (re: same); Determine status / fact-finding; Telephone call with client (re: same) | M.P. | 1.20 | $474.00 |
| 5/12/2016 | Exchange e-mails with opposing counsel regarding scheduling, status and public policy/wrongful termination claim | M.P. | 0.20 | $79.00 |
| 5/13/2016 | Follow-up Maryland COMAR research based on exchange of e-mails with opposing counsel | M.P. | 1.10 | $434.50 |
| 5/24/2016 | Research Annotated Code of Maryland statutes - nursing for inclusion into letter to opposing counsel | M.P. | 0.80 | $316.00 |
| 5/24/2016 | Telephone call with client (re: update); Draft and send substantive response to opposing counsel's 3/31/16 letter | M.P. | 4.60 | $1,817.00 |
| 6/1/2016 | Draft e-mail to opposing counsel (re: possible settlement discussion continuation); Exchange information/theories | M.P. | 1.80 | $711.00 |
| 6/2/2016 | Research impact of handbook language regarding obligation to disclose actual/possible ethical violation on wrongful termination/public policy claim | M.P. | 1.40 | $553.00 |
| 6/7/2016 | Review procedural rules concerning amendment of pleading and review of Amended Complaint | M.P. | 0.20 | $79.00 |
| 6/14/2016 | Checked docket for recent activity | S.V. | 0.10 | No Charge |
| 6/14/2016 | Review settlement e-mail from opposing counsel | M.P. | 0.10 | $39.50 |
| 6/20/2016 | Exchange substantive e-mails with opposing counsel regarding settlement; Review Stipulation for Extension of time to respond | M.P. | 1.60 | $632.00 |
| 6/23/2016 | Calendared deadline for response to amended complaint | S.V. | 0.10 | $7.50 |
| 6/23/2016 | Research/review additional authority cited by opposing counsel | M.P. | 1.30 | $513.50 |
| 6/27/2016 | Address issues raised by opposing counsel concerning settlement demand categories; | M.P. | 1.80 | $711.00 |

| | Calculation of hours | | | |
|---|---|---|---|---|
| 6/28/2016 | Telephone call with client (re: increased demand); Review statutes for authority regarding wages/breaks if in excess of 8 hour day | M.P. | 0.60 | $237.00 |
| 6/29/2016 | Prepare and send settlement demand e-mail to opposing counsel | M.P. | 0.20 | $79.00 |
| 6/30/2016 | E-mail communication with opposing counsel (re: settlement) | M.P. | 0.10 | $39.50 |
| 7/6/2016 | Discuss settlement status with Alan | M.P. | 0.10 | $39.50 |
| 7/6/2016 | Telephone call with client (re: settlement); E-mail to opposing counsel (re: demand) | M.P. | 0.50 | $197.50 |
| 7/7/2016 | Telephone call with opposing counsel (re: increased settlement offer; case daedlines) | M.P. | 0.40 | $158.00 |
| 7/11/2016 | calendared conference | S.V. | 0.10 | $7.50 |
| 7/11/2016 | Recalculation of overtime/meals hours | M.P. | 0.70 | $276.50 |
| 7/11/2016 | Review court deadlines/scheduling order; Draft and send e-mail to client (re: new offer and request to forward revised demand) | M.P. | 0.70 | $276.50 |
| 7/12/2016 | Communications with opposing counsel (re: settlement) | M.P. | 1.20 | $474.00 |
| 7/13/2016 | Reviewed Scheduling Order and calendared deadlines/uploaded order to efile | S.V. | 0.40 | $30.00 |
| 7/13/2016 | Telephone call with client (re: settlement) | M.P. | 0.30 | $118.50 |
| 7/15/2016 | Exchange e-mails with A. Lescht; Telephone call with client (re: settlement) | M.P. | 0.40 | $158.00 |
| 7/15/2016 | Telephone call with opposing counsel (re: settlement) | M.P. | 0.60 | $237.00 |
| 7/18/2016 | Review e-mail from opposing counsel (re: settlement) | M.P. | 0.10 | $39.50 |
| 7/26/2016 | Telephone call with opposing counsel in advance of teleconference with judge; Teleconference with judge (re: status; settlement; scheduling) | M.P. | 1.60 | $632.00 |
| 8/3/2016 | Brief research regarding settlement and retaining court jurisdiction | M.P. | 0.80 | $316.00 |
| 8/3/2016 | Follow-up settlement discussions with opposing counsel | M.P. | 0.60 | $237.00 |
| 8/4/2016 | Calendared Status conference Call | S.V. | 0.10 | $7.50 |
| 8/5/2016 | Exchange communications with opposing counsel and client (re: settlement terms) | M.P. | 0.70 | $276.50 |
| 8/8/2016 | Telephone call with client (re: settlement terms); Telephone call with opposing counsel (re: settlement); E-mail with opposing counsel (re: same) | M.P. | 1.60 | $632.00 |
| 8/9/2016 | Initial review of draft settlement agreement; E-mail to opposing counsel | M.P. | 0.70 | $276.50 |

| 8/9/2016 | Telephone call with opposing counsel (re: draft settlement agreement) | M.P. | 0.70 | $276.50 |
|---|---|---|---|---|
| 8/11/2016 | Telephone call with opposing counsel (re: revisions to draft settlement agreement) | M.P. | 0.90 | $355.50 |
| 8/12/2016 | Review revised draft settlement agreement and forward to client for review | M.P. | 0.80 | $316.00 |
| 8/15/2016 | Brief status telephone call with opposing counsel; Teleconference with opposing counsel and court (re: status) | M.P. | 0.30 | $118.50 |
| 8/16/2016 | Reviewed docket and printed judges memo to counsel | S.V. | 0.20 | No Charge |
| **SUBTOTAL** | | | **68.40** | **$25,087.00** |

### Costs

| 1/30/2016 | metro fare/travel expense | $6.00 |
|---|---|---|
| 1/30/2016 | Parking | $6.00 |
| 2/23/2016 | Lasership service to WPTS 2.12.16 | $14.61 |
| **SUBTOTAL** | | **$26.61** |

### Matter Ledgers

| **SUBTOTAL** | **$0.00** |
|---|---|

### Trust Account

| 8/19/2016 | Previous Balance | $0.00 |
|---|---|---|
| **AVAILABLE IN TRUST** | | **$0.00** |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CARMELLE BAPTISTE,

    Plaintiff

        v.

MARYLAND TREATMENT CENTERS, INC.

    Defendant.

Case No. 8:15-cv-03698-PWG

### AFFIDAVIT OF MARC E. PASEKOFF

I, Marc E. Pasekoff, state the following under penalty of perjury:

1.  I served as counsel to Plaintiff Carmelle Baptiste in the above-referenced case.

2.  I became a licensed attorney in 1992 and originally was admitted to the U.S. District Court for the District of Maryland Bar in 1997.

3.  I performed 55.1 hours of work in connection with Ms. Baptiste's case.

4.  I researched possible additional causes of action, and prepared the Amended Complaint which included a claim for wrongful termination. I engaged opposing counsel in vigorous debate, including legal research and citations, concerning the validity of Plaintiff's wrongful termination cause of action. In addition, as requested by Ms. Baptiste, I pursued her potential COBRA claims, both before and after Defendant provided documentation that indicated that appropriate notice had been sent. Finally, I engaged in extensive negotiations with opposing counsel to secure a settlement and a mutually agreeable settlement agreement.

5.  I have personal knowledge that lawyers with Alan Lescht and Associates, P.C. performed an additional 9.8 hours of work for, and on behalf of, Plaintiff.



EXHIBIT
B

I affirm that the foregoing is true and based upon my personal knowledge and belief.

Marc E. Pasekoff

$8-29-16$

Date