# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Southern Division*

|  |  |  |
|---|---|---|
| **CARMELLE BAPTISTE,** | * | |
| Plaintiff, | * | |
| v. | * | **Civil Case No.: PWG-15-3698** |
| **MARYLAND TREATMENT CENTERS, INC.,** | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Carmelle Baptiste filed this action against her former employer, Maryland Treatment Centers, Inc. seeking damages for unpaid wages and wrongful termination in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219; the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl., §§ 3-501 to -509, and Maryland public policy. Am. Compl. ¶¶ 1 and 79, ECF No. 5. After Maryland Treatment Centers answered the Complaint, but before formal discovery commenced, the parties jointly moved for court approval of the settlement agreement they have executed. Jt. Mot. & Mem., ECF No. 22.[1] In light of the facts of this case, I find the net amount Baptiste will receive to be fair and reasonable and therefore approve the settlement. Additionally, I will approve the attorneys' fee award under a lodestar calculation even though the award was calculated using a contingent-fee arrangement.

---

[1] The Parties' Joint Motion and Memorandum, contains multiple documents. For ease of reference, I cite to all documents as "Jt. Mot. & Mem." and provide the page numbers generated by CM/ECF.

## I.      BACKGROUND

Baptiste worked as a nurse at Maryland Treatment Centers's Rockville, Maryland facility from 2005 until her termination on February 26, 2015. Am. Compl. ¶¶ 46, 50. During that time Baptiste alleges that Maryland Treatment Centers "implemented a facility wide automatic deduction policy, requiring the automatic deduction of [thirty minute] meal breaks." *Id.* at 13. This policy was consistently enforced despite employees working throughout their breaks. *Id.* In fact, Baptiste asserts that she was "required to stay at [her] duty post during [her] uncompensated 'meal break.'" *Id.* at 19.   Furthermore, Baptiste alleges that pursuant to Maryland Treatment Centers's "written policies, [she was] entitled to all accrued . . . vacation leave upon the culmination of her employment, unless the termination was for cause." *Id.* at 48. She argues her termination was without cause, and stemmed from her reporting unlawful practices of her superior. *Id.* at 49. As such, Baptiste is also seeking over "three hundred hours of unpaid vacation leave." *Id.* at 47.

On that basis, Baptiste filed suit in this Court against Maryland Treatment Centers for unpaid wages and wrongful termination on December 2, 2015, alleging violations of the FLSA and MWPCL and wrongful termination.[2]   On July 8, 2016, Maryland Treatment Centers answered Baptiste's Amended Complaint. ECF No. 14. On August 29, 2016, the parties filed a Joint Motion for Approval of Proposed Settlement Agreement. Jt. Mot. & Mem.

The settlement agreement provides that "without any party admitting liability to the other, the parties have reached a settlement of the Litigation and have agreed as part of their settlement to a General Release." Jt. Mot. & Mem. 3. Specifically, Maryland Treatment Centers

---

[2] Baptiste filed an amended Complaint on February 12, 2016. Am. Compl. Baptiste also alleged violations of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. §§ 1161 *et seq.*, but the claim is not included in the settlement agreement, as Maryland Treatment Centers "provided documentation [to Plaintiff] that indicated appropriate notice had been sent." Jt. Mot. & Mem. 14. Thus, Baptiste's COBRA claim is without merit.

is released from "all claims, rights, charges and/or causes of action which Baptiste had, now has or hereafter may have based on any act or omission which occurred through the date [the] Agreement [was] signed." *Id.* at 4.   The Settlement Agreement provides that Maryland Treatment Centers will pay Baptiste $50,000, but does not address attorneys' fees. *Id.* at 3.

## II.    DISCUSSION

### A. FLSA Settlement Generally

Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees. To that end, the statute's provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).   However, court-approved settlement is an exception to that rule, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

Although the Fourth Circuit has not addressed the factors to be considered in approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Id.* at *3 (citing *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010)).   The settlement must "reflect a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions," which includes findings with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the

3

attorneys' fees, if included in the agreement. *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)). These factors are most likely to be satisfied where there is an "assurance of an adversarial context" and the employee is "represented by an attorney who can protect [his] rights under the statute." *Lynn's Food Stores*, 679 F.2d at 1354.

### B. *Bona Fide* Dispute

In order to determine the existence of a *bona fide* dispute between parties under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement. *See Lomascolo*, 2009 WL 3094955, at *16–17. The parties have shown through their Joint Motion and supporting Memorandum that there are several FLSA issues in *bona fide* dispute. Primarily, the parties disagree on whether Baptiste is entitled to overtime for working during her meal breaks and the amount she could receive in unpaid overtime. *See* Jt. Mot. & Mem. 9.

### C. Fairness & Reasonableness

In evaluating the fairness and reasonableness of this settlement, I must consider:

(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff[]; (5) the opinions of class counsel . . . ; and (6) the probability of plaintiff['s] success on the merits and the amount of the settlement in relation to the potential recovery.

*Lomascolo*, 2009 WL 3094955, at *10.

First, though formal discovery has not commenced the parties did conduct "extensive informal discovery, including records which would be produced if the parties conducted formal, written discovery." Jt. Mot. & Mem. 9–10. Secondly, the case is a complex one, involving both

4

federal and state claims. *Id.* at 10. With regard to the third and fourth factors, the parties were both "represented by [experienced] counsel throughout the course of litigation." *Id.* Additionally, the attorneys "engaged in vigorous debate" and "extensive negotiations . . . to secure a settlement." *Id.* at 14. I accept these representations, and find that there is no evidence of fraud or collusion in the settlement. *See Lomascolo,* 2009 WL 3094955, at *12 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary"). As for the fifth factor, it is not relevant in this case, as it pertains to class actions and the Settlement Agreement only addresses Baptiste. *See id.* at *10.

Turning to the sixth and final factor, the total proposed settlement is $30,000, exclusive of attorneys' fees, which would compensate Baptiste for approximately 200% of her FLSA claims. *See* Jt. Mot. & Mem. 10. Baptiste argued that the "maximum amount of overtime pay [she] could have recovered . . . under the FLSA [and MWPCL], was approximately $15,000." *Id.* On the other hand, without conceding liability, Maryland Treatment Centers believed Baptiste could have only recovered a maximum of $13,166.50.[3] *Id.* at 9. Accordingly, the settlement amount takes "into account the risks attendant with litigation," which includes the possibility that Baptiste could recover nothing or significantly less than her claimed damages, "as well as the possibility that, even if liability were found, Plaintiff may not be entitled to additional liquidated damages." *Berrios v. Green Wireless, LLC,* No. GJH-14-3655, 2016 WL 1562902, at *3 (D. Md. Apr. 18, 2016). Finally, the parties agree that the Settlement Agreement "reflects a

---

[3] These potential recovery amounts do not include any enhanced damages awards of liquidated damages under the FLSA, or treble damages under the MWPCL. Moreover, this Court has held that "Plaintiffs are entitled to recover liquidated damages under the FLSA or treble damages under the MWPCL, but not both." *Quiroz v. Wilhelm Commercial Builders, Inc.,* No. WGC-10-2016, 2011 WL 5826677, at *2 (D. Md. Nov. 17, 2011).

fair and reasonable compromise of this dispute," therefore, I find that the total settlement amount is reasonable and fair.[4]  Jt. Mot. & Mem. 8.

The Settlement Agreement also contains a general release of claims beyond those specified in the Complaint. *Id.* at 4. A general release like this can render settlement agreements unreasonable. *See, e.g.*, *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010) (concluding that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer" that "fails judicial scrutiny"); *McKeen–Chaplin v. Franklin Am. Mortg. Co.*, No. 10-5243, 2012 WL 6629608, at *3 (N.D. Cal. Dec. 19, 2012). If, however, the employee is reasonably compensated for the FLSA violations, the settlement agreement can be accepted and I am not required to evaluate the reasonableness of the settlement as to the non-FLSA claims. *Saman*, 2013 WL 2949047, at *5 (citing *Robertson v. Ther-Rx Corp.*, No. 09-1010-MHT, 2011 WL 1810193, at *2 (M.D. Ala. May 12, 2011)).   Since the Settlement Agreement reasonably compensates Baptiste for her FLSA claims, I find that the general release provision is not unreasonable.

### D. Attorney's Fees

The Settlement Agreement does not provide for attorneys' fees, rather, Baptiste "retained her attorney under a contingent fee retainer agreement providing counsel 40 percent of [the] settlement" and "was negotiated separately from the damages."  Jt. Mot. & Mem. 13. Nevertheless, the court must still assess this fee for reasonableness. *See Saman*, 2013 WL

---

[4] The actual validity of Baptiste's wrongful termination claim is not discussed in the parties' Joint Motion. But the Settlement amount includes damages for wrongful termination. Jt. Mot. & Mem. 10. This Memorandum Opinion makes no findings regarding the reasonableness of the settlement as it relates to Plaintiff's wrongful termination claim. *See Saman*, 2013 WL 2949047, at *5 (citing *Murphy v. RGIS Inventory Specialists, LLC*, No. 07–cv–89–28JGG, 2007 WL 2412996, at *1 n.1 (M.D. Fla. Aug. 21, 2007) (declining to consider the fairness of that portion of a settlement agreement that resolved the plaintiff's unrelated state law claim for unemployment benefits)).

2949047, at *6. In general, contingent-fee arrangements are allowed, and sometimes even preferred; however, in many common-fund cases, *see, e.g., Goldenberg v. Marriott PLP Corp.*, 33 F.Supp.2d 434, 437 (D.Md.1998), a district court may abuse its discretion by granting attorneys' fees pursuant to a contingent-fee arrangement, *Llora v. H.K. Research Corp.*, No. 96–1552, 1997 WL 693062, at *1 (4th Cir. Oct. 29, 1997); *Lyle v. Food Lion, Inc.* 954 F.2d 984, 988 (4th Cir. 1992). Consequently, because a contingent fee distributes a portion of the damages award to the attorney, it is an impermissible infringement on the statutory award to the employee. This Court has held, however, that "an attorney's fee award negotiated pursuant to a contingent-fee arrangement can be approved if the court finds (1) that the fees were negotiated separately from the damages, so that they do not infringe on the employee's statutory award, and (2) that they are reasonable under the lodestar approach." *Garcia v. Decalo Med. Grp., LLC*, No. 14-CV-00301, 2015 WL 9311984, at *4 (D. Md. Dec. 23, 2015) (citing *Saman,* 2013 WL 2949047, at *6).

The lodestar amount is defined as "a reasonable hourly rate multiplied by hours reasonably expended." *Butler v. DirectSAT USA, LLC*, No. DKC 10-2747F, 2015 WL 5177757, at *4 (D. Md. Sept. 3, 2015). In assessing the reasonableness of attorneys' fees, this Court evaluates the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* For that reason, this Court has established reasonable hourly rates for attorneys' fees. *See* D. Md. Loc. R., App'x B, Guideline 3. I find that the billing rates charged by Baptiste's attorneys are reasonable and in accordance with this Court's Local Rules.

As for the hours expended, the Joint Motion and Memorandum includes detailed information listing the billable hours for Baptiste's attorneys. In total, the attorneys worked 64.9 hours on this case. Moreover, while Baptiste's attorneys seek approval of attorneys' fees in the amount of $20,000, the actual cost incurred was $25,113.61. *See* Jt. Mot. & Mem. 17. Taking into account the period of litigation, which included extensive informal discovery, research, and negotiations, I find that the discounted fee of $20,000 is reasonable. Accordingly, I will approve the attorneys' fee award of $20,000.

## III.   ORDER

Accordingly, it is this ___ day of _____, 2016, hereby ORDERED that:

1. The Joint Motion to Approve Settlement, ECF No. 22, IS GRANTED.

2. The Clerk is DIRECTED to CLOSE THE CASE.

_____/S/_____
Paul W. Grimm
United States District Judge

8